Filed 2/22/23; Certified for Publication 3/22/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B320352 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. TA144611 |
| v. | |
| RAMON PATTON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hector E. Gutierrez, Judge. Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In September 2018, defendant and appellant Ramon Patton entered into a plea agreement with the People. Patton pleaded no contest to attempted murder and admitted he had personally used and discharged a firearm in the commission of the crime. In January 2022 Patton filed a petition for resentencing under Penal Code section 1172.6.[1] The trial court denied Patton's petition, stating, "Patton was the only perpetrator and the only shooter," and therefore ineligible for relief. We affirm because the record of conviction establishes Patton is ineligible for resentencing as a matter of law.

**FACTS AND PROCEDURAL BACKGROUND**

1. ***The shooting of David Jackson***[2]

At about 7:40 p.m. on May 27, 2017, Los Angeles Police Department Detective Anthony Balderama was called to the Casa Motel on South San Pedro Street in Los Angeles about a shooting. The motel manager had surveillance footage of the shooting and Balderama watched it. At the preliminary hearing, Balderama testified to what he'd seen in the footage: A man later identified as David Jackson drove a car into the

---

[1] References to statutes are to the Penal Code. Effective June 30, 2022, former section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

[2] We take our facts from the testimony given at Patton's preliminary hearing on January 9, 2018. We previously granted the Attorney General's request for judicial notice of the transcript of that hearing. We consider only the witness testimony "that is admissible under current law," disregarding any testimony that was admitted at the preliminary hearing under Proposition 115, codified as subdivision (b) of Section 872. (See § 1172.6, subd. (d)(3).)

parking lot of the motel. He got out of the car and walked up to the front counter.

A man later identified as Patton walked up to the driveway of the motel. He pulled a handgun from his front sweatshirt pocket and fired three rounds at Jackson. Jackson fell to the ground but then got up and went back to his car. Patton "fle[d] in a northeasterly direction."

Detective Christian Mrakich was assigned to the case on June 22, 2017. He watched the surveillance video. Mrakich knew Patton; Mrakich had met him and spoken with him in the past. Mrakich got a photograph of Patton from his Facebook page and then had a search warrant served "for the official records" of Patton's Facebook account.

In the Facebook photo, Patton was wearing what the detective described as "stone washed or bleached type blue jeans." The jeans Patton was wearing in the photo—with "distinct patterns" and "stains" with "shape[s]"—appeared to be the same jeans the shooter was wearing in the surveillance footage. The court at the preliminary hearing, after examining the Facebook photo as well as still photos from the surveillance footage, stated, "[T]hey're very similar."

Officer Otoniel Ceballos also testified at the preliminary hearing. Ceballos was assigned to a gang enforcement detail. Ceballos had had "numerous contacts" with Patton and had seen him 20 times. Ceballos had spoken with Patton and had "been able to watch the way he walks." Ceballos had watched the surveillance footage of the May 27 shooting and he recognized Patton as the shooter. Ceballos listed "his mannerisms, the way he walks, his stature, the way he runs away." Ceballos continued, "I've seen him run away from us. I've seen him walk. I've seen his stature up close and personal. In my opinion, that's him."

## 2.     *The charges and plea agreement*

The People charged Patton with the attempted willful, deliberate, and premeditated murder of Jackson. The People alleged Patton committed the crime for the benefit of a criminal street gang and personally inflicted great bodily injury on Jackson. The People further alleged that a principal personally used a firearm, personally and intentionally discharged a firearm, and personally and intentionally discharged a firearm that caused great bodily injury under section 12022.53, subdivisions (b), (c), (d), and (e)(1). The People also charged Patton with carrying a loaded firearm while being an active participant in a street gang and with possession of a firearm by a felon.

On the date set for trial, Patton entered into a plea agreement with the prosecution. After an offer by the People (32 years) and a counteroffer by the defense (25 years), the prosecution offered Patton—who was facing two indeterminate life terms—a determinate term of 29 years. Patton accepted. The prosecution agreed to strike the allegation that the attempted murder was willful, deliberate, and premeditated. In response to the prosecutor's questions, Patton confirmed he understood his rights and the consequences of his plea, and he was pleading freely and voluntarily. Patton then pleaded no contest to attempted murder. The prosecutor asked, "As to the allegation under Penal Code section 12022.53(c) that you personally used and discharged a firearm in the course of the crime do you admit or deny that allegation?" Patton replied, "Admit."

In accordance with the parties' agreement, the court sentenced Patton to 29 years in the state prison, calculated as the high term of nine years for the attempted murder plus

4

20 years for the firearm enhancement.  The court dismissed the remaining counts and allegations on the People's motion.

### 3. *Patton's petition for resentencing*

On January 18, 2022, Patton, representing himself, filed a form petition for resentencing under section 1172.6.  Patton checked boxes on the form stating (1) the information filed in his case "allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine," (2) he was "convicted of murder, attempted murder, or manslaughter following a trial or [he] accepted a plea offer in lieu of a trial at which [he] could have been convicted of murder or attempted murder," and (3) "[he] could not presently be convicted of murder or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."  Patton also checked a fourth box that stated, "Having presented a facially sufficient petition, I request that this Court appoint counsel to represent me."

The court appointed the Alternate Public Defender to represent Patton.  On April 11, 2022, the prosecution filed a response to Patton's petition.  The prosecution asserted Patton was not entitled to relief because "as the direct perpetrator [he] could not have been convicted of attempted murder based upon the natural and probable consequences doctrine."  Patton did not file a reply to the People's response.

On May 13, 2022, counsel appeared by Webex for a hearing on Patton's petition.  Patton also was present by Webex. The court stated it had read the transcripts of the preliminary hearing and of the change of plea.  The court then asked counsel, "Does either side wish to be heard further or augment the record

in any way?" Patton's counsel replied, "No, I don't need to submit anything more." The prosecutor also said he had nothing further to present and the court responded, "Well, thank you again to both sides."

The court stated, "I read through the entirety of the preliminary hearing transcript. The defendant was identified by way of social media, some distinctive jeans that he was wearing as the shooter, and there was only one shooter. [¶] Furthermore, I read the plea transcript in which the defendant admitted to personally discharging a firearm."

The court said, "So in this particular case, reading the People's response and the preliminary hearing, the court finds that, number one, there's more than substantial evidence that Ramon Patton was the only perpetrator and the only shooter as charged with attempted murder." After summarizing the terms of the plea agreement, the court concluded, "Therefore, the court is satisfied beyond a reasonable doubt and based on the information that I have in front of me that Mr. Patton was acting alone, he was the shooter, and that substantial evidence supports the charge of attempted murder and his plea of no contest to that charge. [¶] For those reasons, the court finds that he has failed to make a prima facie claim for relief, and the court respectfully denies the motion." The court asked both counsel if there was "anything else," and both replied, "No."

## DISCUSSION

1.  *Section 1172.6*

Senate Bill No. 1437 (Senate Bill 1437) took effect on January 1, 2019. (See Stats. 2018, ch. 1015, § 4.) The bill amended existing law on accomplice liability for murder " 'to ensure that murder liability is not imposed on a person who is not the actual killer . . . .' " (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417, quoting Stats. 2018, ch. 1015, § 1,

6

subd. (f); § 189, subd. (e)(1).)  To accomplish this goal, Senate Bill 1437 limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure a person's sentence is commensurate with his individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*); *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*).)

Senate Bill 1437 also authorized, through new section 1172.6, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime.  (See *Lewis*, *supra*, 11 Cal.5th at pp. 959-960; *Gentile*, *supra*, 10 Cal.5th at p. 843.)

If the petition contains all the required information, including a declaration by the petitioner that he was convicted of murder and is eligible for relief (§ 1172.6, subd. (b)(1)(A)), section 1172.6, subdivision (c) requires the court to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply,[3] and to determine if the petitioner has made a prima facie showing that he is entitled to relief. (See *Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he falls within the provisions of section 1172.6 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit

---

[3]     Section 1172.6, subd. (b)(3) also requires the court to appoint counsel to represent the petitioner, if requested.  Here, the trial court did appoint counsel for Patton.

from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry under [section 1172.6,] subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." '[4] . . . 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid*.; see *People v. Daniel* (2020) 57 Cal.App.5th 666, 675.)

Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775), effective as of January 1, 2022, amended section 1172.6 in various respects. The bill clarified that "persons who were convicted of attempted murder . . . under . . . the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theor[y]." (Stats. 2021, ch. 551, § 1, subd. (a).) Senate Bill 775 also clarified that the burden of proof at a section 1172.6 hearing is beyond a reasonable doubt and a trial court's finding that there is substantial evidence to support a conviction is insufficient to meet this burden. (§ 1172.6, subd. (d)(3).) In addition, the bill clarified the standards for the admissibility of evidence at the evidentiary hearing. Section 1172.6, subdivision (d)(3) now provides, "The admission of evidence

---

[4] The court then holds an evidentiary hearing at which the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1172.6, subd. (d)(3).)

in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3).)

We independently review a trial court's determination of whether a petitioner has made a prima facie showing. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52 (*Harden*).)

**2.** ***The trial court was not required to issue an order to show cause or conduct an evidentiary hearing because—as the sole perpetrator of the attempted murder—Patton is ineligible for resentencing as a matter of law***

Patton contends that—because he checked a box on a form that stated he "could not presently be convicted" of attempted murder "because of changes made to Penal Code §§ 188 and 189" —the trial court was required to issue an order to show cause and conduct an evidentiary hearing under section 1172.6, subdivision (d)(3). Patton does not acknowledge Justice Groban's statement for a unanimous court in *Lewis* that, "The record of conviction will necessarily inform the trial court's prima facie inquiry under section 117[2.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

At the hearing on Patton's petition, the court stated it had read the preliminary hearing transcript as well as the

9

transcript of Patton's change of plea in his negotiated agreement with the prosecution. Police officers testified at the preliminary hearing that they had watched the surveillance video and they knew and recognized Patton as the sole perpetrator, who approached Jackson as he stood at the motel clerk's desk and fired several rounds at him. Those officers were personally involved in the investigation of the shooting of Jackson, and they were subject to cross-examination at the preliminary hearing. In the trial court, Patton never offered any theory to support his implicit contention now that he was an accomplice and not the person who actually shot Jackson. Nor, on appeal, has Patton even suggested what facts he has to demonstrate that someone else shot Jackson and he was merely an accomplice.

As the sole and actual perpetrator of the attempted murder of Jackson, Patton is ineligible for resentencing as a matter of law. (*People v. Garcia* (2022) 82 Cal.App.5th 956, 969-971 [affirming denial of resentencing because record of conviction "unequivocally establishes" defendant was the sole perpetrator and actual killer]; *Harden, supra*, 81 Cal.App.5th at pp. 47-48, 56 [same]; *People v. Myles* (2021) 69 Cal.App.5th 688, 692-694 [affirming denial of resentencing because defendant admitted at parole suitability hearing that she was actual killer; defendant therefore was " 'directly liable,' " " 'not vicariously liable' "]; *People v. Gallo* (2020) 57 Cal.App.5th 594, 599-600 [defendant was actual killer]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 669, 671, 674 [affirming summary denial of resentencing petition where record of conviction showed petitioner was actual killer]; see also *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [defendant "not entitled to any relief under section 1172.6" because he "was the actual killer and the only participant in the killing"]; cf. *People v. Daniel, supra*, 57 Cal.App.5th at p. 678 [failure to appoint counsel was harmless because defendant was

actual killer who was "directly, not vicariously, liable for [victim's] murder"].)

Finally, we reject Patton's contention that the trial court " 'engage[d] in factfinding, weigh[ed] the evidence, or reject[ed] the petition's allegations[5] on the basis of adverse credibility determinations.' " The sworn testimony of police officers, based on surveillance video of the crime, that Patton committed the shooting was and is uncontroverted. "[N]o factfinding, weighing of evidence, or credibility determinations" were or are necessary here. "[T]he record of conviction irrefutably establishes as a matter of law that" Patton was convicted as the actual perpetrator of the attempted murder. (*Harden*, *supra*, 81 Cal.App.5th at pp. 47, 56.) In short, Patton was convicted, by his plea, under a valid theory of attempted murder that survives the changes to sections 188 and 189.

---

[5] Nowhere in Patton's petition did he assert he was not the sole and actual perpetrator. Apparently he contends his checking of a box that he "could not presently be convicted" of attempted murder encompasses such an implicit assertion.

11

## DISPOSITION

We affirm the trial court's order denying Ramon Patton's petition for resentencing.


EGERTON, J.

We concur:


EDMON, P. J.


RICHARDSON (ANNE K.), J.*

---

*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 3/22/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAMON PATTON,<br><br>    Defendant and Appellant. | B320352<br><br>Los Angeles County<br>Super. Ct. No. TA144611<br><br>ORDER CERTIFYING<br>FOR PUBLICATION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

    The opinion in the above-entitled matter, filed on February 22, 2023, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports.

    There is no change in the judgment.

_____
EGERTON, J.        EDMON, P. J.        RICHARDSON (ANNE K.), J.*

_____

\*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.